**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

LUKAS KUBILIUS, *on behalf of himself*
*and others similarly situated*,

              Plaintiff,

              v.

BARILLA AMERICA, INC.

              Defendant.

Case No.: 18-CV-06656

**AMENDED CLASS ACTION COMPLAINT**

**JURY TRIAL DEMANDED**

Plaintiff LUKAS KUBILIUS ("Plaintiff KUBILIUS" or "Plaintiff"), individually and on behalf of all other persons similarly situated, by his undersigned attorneys, pursuant to this Class Action Complaint against the Defendant, BARILLA AMERICA, INC. ("Defendant" or "Barilla"), alleges the following:

## <u>NATURE OF THE ACTION</u>

1.    This is a consumer protection action seeking redress for, and a stop to, Defendant's unfair and deceptive practice of advertising and marketing its Barilla® pasta sauces as having "No Preservatives."

2.    Defendant's "No Preservatives" representations are deceptive because these products in fact contain the preservative citric acid. This labeling deceives consumers into believing that they are receiving healthier, preservative-free pasta sauces even though Defendant's products cannot live up to these claims.

3. Conscious of consumers' increased interest in more nutritious foods free of additives and willingness to pay more for products perceived to meet this preference, Defendant misleadingly, illegally, and deceptively seeks to capitalize on these consumer health trends.

4. Defendant sold and continues to sell pasta sauces with deceptive "No Preservatives" labeling. These are:

1. Barilla® Marinara Sauce
2. Barilla® Tomato Basil Sauce
3. Barilla® Mushroom Sauce
4. Barilla® Spicy Marinara Sauce
5. Barilla® Roasted Garlic Sauce
6. Barilla® Sweet Peppers Sauce
7. Barilla® Traditional Sauce
8. Barilla® Chunky Traditional Sauce
9. Barilla® Tuscan Herb Sauce
10. Any other Barilla® pasta sauce that has "No Preservatives" on the label but contains citric acid or any other preservative (collectively, "the Products"; individually, a "Product")

*See* **Exhibit A**

5. Plaintiff brings this proposed consumer class action on behalf of himself and all other persons who, from the applicable limitations period up to and including the present (the "Class Period"), purchased the Products for consumption and not resale.

6. Defendant markets the Products in a way that is deceptive to consumers under consumer protection laws of Illinois, New York, the other 48 states, and the District of Columbia. These statutes are:

*1)* Alabama Deceptive Trade Practices Act, Ala. Statues Ann. §§ 8-19-1, *et seq.;*
*2)* Alaska Unfair Trade Practices and Consumer Protection Act, Ak. Code § 45.50.471, *et seq.;*
*3)* Arizona Consumer Fraud Act, Arizona Revised Statutes, §§ 44-1521, *et seq.;*
*4)* Arkansas Deceptive Trade Practices Act, Ark. Code § 4-88-101, *et seq.;*
*5)* California Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.,* and California's Unfair Competition Law, Cal. Bus. & Prof Code § 17200, *et seq.;*
*6)* Colorado Consumer Protection Act, Colo. Rev. Stat. § 6 - 1-101, *et seq.;*
*7)* Connecticut Unfair Trade Practices Act, Conn. Gen. Stat § 42-110a, *et seq.;*
*8)* Delaware Deceptive Trade Practices Act, 6 Del. Code § 2511, *et seq.;*
*9)* District of Columbia Consumer Protection Procedures Act, D.C. Code § 28 3901, *et seq.;*

*10)* Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. Ann. § 501.201, *et seq.;*

*11)* Georgia Fair Business Practices Act, § 10-1-390 *et seq.;*

*12)* Hawaii Unfair and Deceptive Practices Act, Hawaii Revised Statues § 480 1, *et seq.,* and Hawaii Uniform Deceptive Trade Practices Act, Hawaii Revised Statutes § 481A-1, *et seq.;*

*13)* Idaho Consumer Protection Act, Idaho Code § 48-601, *et seq.;*

*14)* Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS § 505/1, *et seq.;*

*15)* Indiana Deceptive Consumer Sales Act, Indiana Code Ann. §§ 24-5-0.5-0.1, *et seq.;*

*16)* Iowa Consumer Fraud Act, Iowa Code §§ 714.16, *et seq.;*

*17)* Kansas Consumer Protection Act, Kan. Stat. Ann §§ 50 626, *et seq.;*

*18)* Kentucky Consumer Protection Act, Ky. Rev. Stat. Ann. §§ 367.110, *et seq.,* and the Kentucky Unfair Trade Practices Act, Ky. Rev. Stat. Ann §§ 365.020, *et seq.;*

*19)* Louisiana Unfair Trade Practices and Consumer Protection Law, La. Rev. Stat. Ann. § § 51:1401, *et seq.;*

*20)* Maine Unfair Trade Practices Act, 5 Me. Rev. Stat. § 205A, *et seq,,* and Maine Uniform Deceptive Trade Practices Act, Me. Rev. Stat. Ann. 10, § 1211, *et seq.,*

*21)* Maryland Consumer Protection Act, Md. Com. Law Code § 13-101, *et seq.;*

*22)* Massachusetts Unfair and Deceptive Practices Act, Mass. Gen. Laws ch. 93A;

*23)* Michigan Consumer Protection Act, § § 445.901, *et seq.;*

*24)* Minnesota Prevention of Consumer Fraud Act, Minn. Stat §§ 325F.68, *et seq.;* and Minnesota Uniform Deceptive Trade Practices Act, Minn. Stat. § 325D.43, *et seq.;*

*25)* Mississippi Consumer Protection Act, Miss. Code Ann. §§ 75-24-1, *et seq.;*

*26)* Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et seq.;*

*27)* Montana Unfair Trade Practices and Consumer Protection Act, Mont. Code §30-14-101, *et seq.;*

*28)* Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59 1601, *et seq.,* and the Nebraska Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301, *et seq.;*

*29)* Nevada Trade Regulation and Practices Act, Nev. Rev. Stat. §§ 598.0903, *et seq.;*

*30)* New Hampshire Consumer Protection Act, N.H. Rev. Stat. § 358-A:1, *et seq. ;*

*31)* New Jersey Consumer Fraud Act, N.J. Stat. Ann. §§ 56:8 1, *et seq.;*

*32)* New Mexico Unfair Practices Act, N.M. Stat. Ann. §§ 57 12 1, *et seq.;*

*33)* New York Deceptive Acts and Practices Act, N.Y. Gen. Bus. Law §§ 349, *et seq.;*

*34)* North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51 15 01, *et seq.;*

*35)* North Carolina Unfair and Deceptive Trade Practices Act, North Carolina General Statutes §§ 75-1, *et seq.;*

*36)* Ohio Deceptive Trade Practices Act, Ohio Rev. Code. Ann. §§ 4165.01. *et seq.;*

*37)* Oklahoma Consumer Protection Act, Okla. Stat. 15 § 751, *et seq.;*

*38)* Oregon Unfair Trade Practices Act, Rev. Stat § 646.605, *et seq.;*

*39)* Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 Penn. Stat. Ann. § § 201-1, *et seq.;*

*40)* Rhode Island Unfair Trade Practices And Consumer Protection Act, R.I. Gen. Laws § 6-13.1-1, *et seq.;*

*41)* South Carolina Unfair Trade Practices Act, S.C. Code Laws § 39-5-10, *et seq.;*

*42)* South Dakota's Deceptive Trade Practices and Consumer Protection Law, S.D. Codified Laws §§ 37 24 1, *et seq.;*

*43)* Tennessee Trade Practices Act, Tennessee Code Annotated §§ 47-25-101, *et seq.;*

*44)* Texas Stat. Ann. §§ 17.41, *et seq.,* Texas Deceptive Trade Practices Act, *et seq.;*

*45)* Utah Unfair Practices Act, Utah Code Ann. §§ 13-5-1, *et seq.;*

*46)* Vermont Consumer Fraud Act, Vt. Stat. Ann. tit.9, § 2451, *et seq.;*

*47)* Virginia Consumer Protection Act, Virginia Code Ann. §§59.1-196, *et seq.;*

*48)* Washington Consumer Fraud Act, Wash. Rev, Code § 19.86.010, *et seq.;*

49) West Virginia Consumer Credit and Protection Act, West Virginia Code § 46A-6-101, *et seq.;*

50) Wisconsin Deceptive Trade Practices Act, Wis. Stat. §§ 100. 18, *et seq.;*
51) Wyoming Consumer Protection Act, Wyoming Stat. Ann. §§40-12-101, *et seq.*

## JURISDICTION AND VENUE

7.     The Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this is a class action, as defined by 28 U.S.C § 1332(d)(1)(B), in which a member of the putative Class is a citizen of a different state than Defendant, and the amount in controversy exceeds the sum or value of $5,000,000, excluding interest and costs. *See* 28 U.S.C. § 1332(d)(2).

8.     This court has personal jurisdiction over Defendant because Defendant's principal place of business is in Illinois. The Products are advertised, marketed, distributed, and sold throughout Illinois. Defendant engages in the wrongdoing alleged in this Complaint throughout the United States, including Illinois. Defendant is authorized to do business in Illinois, and Defendant has sufficient contacts with Illinois and/or otherwise has intentionally availed itself of the markets in Illinois, rendering the exercise of jurisdiction by the Court permissible under traditional notions of fair play and substantial justice. Moreover, Defendant engages in substantial and not isolated activity within Illinois.

9.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(a) and (b), because a substantial part of the events giving rise to Plaintiff's claims occurred in this District.

## PARTIES

*Plaintiff*

10.     Plaintiff LUKAS KUBILIUS is, and at all times relevant hereto has been, a citizen of New York State and a resident of Suffolk County. On February 1, 2018, Plaintiff KUBLIUS

purchased a 24 oz. Barilla Tomato Basil Sauce from a Stop&Shop supermarket in Ronkonkoma, NY for the premium price of $3.29.

11.     Plaintiff KUBILIUS purchased the Product relying on Defendant's representations on the Product packaging. As a result of Defendant's deceptive conduct as alleged herein, Plaintiff KUBILIUS was injured when he paid money for a pasta sauce that did not deliver the qualities it promised and misled him as to its contents. He paid the above sum on the assumption that he was purchasing a preservative-free pasta sauce.  He would not have been willing to pay the sum he paid had he known the Product was mislabeled. Defendant's "No Preservatives" labeling misled Plaintiff KUBILIUS into believing that he was purchasing a preservative-free pasta sauce. Defendant delivered a Product with significantly less value than was warranted by its representations, thereby depriving him of the benefit of his bargain and injuring him in an amount up to the purchase price. Damages can be calculated through expert testimony at trial.

*Defendant*

12.     BARILLA AMERICA, INC. is a corporation organized under the laws of Illinois with its principal place of business at 885 Sunset Ridge Road, Northbrook, IL 60062.  Defendant's registered agent is: MS Registered Agent Services, 191 N. Wacker Dr., Suite 1800, Chicago, IL, 60606.

13.     Defendant markets the Products throughout the United States.  The Products are available at numerous retail and online outlets, including Target, Stop&Shop and elsewhere.

14.     The advertising for the Products, relied upon by Plaintiff, is approved by Defendant and its agents, and is disseminated by Defendant and its agents through advertising containing the misrepresentations alleged herein. The advertising for the Products is designed to encourage consumers to purchase the Products, and misleads the reasonable consumer, i.e. Plaintiff and the

Class. Defendant owns, manufactures, and distributes the Products and authorizes the unlawful, fraudulent, unfair, misleading, and/or deceptive labeling and advertising for the Products.

## FACTUAL ALLEGATIONS

**Defendant's "No Preservatives" Representation Is False**

15.     Defendant misleads consumers into believing that the Products contain no preservatives with its false labeling to this effect.  However, the Products actually contain citric acid, whose functions as preservatives have been well-documented.

16.     The FDA defines a chemical preservative as "any chemical that, when added to food, tends to prevent or retard deterioration thereof, but does not include common salt, sugars, vinegars, spices, oils extracted from spices, substances added to food by direct exposure thereof to wood smoke, or chemicals applied for their insecticidal or herbicidal properties."  21 C.F.R. § 101.22(a)(5).

17.     The citric acid in the Products has precisely this effect.

18.     The MacMillan Dictionary defines "tends" as "to usually do a particular thing," as in "He tends to exaggerate" or "The gym tends to get very busy at around six o'clock."[1]  The statements of the FDA and other experts establish that citric acid tends to prevent or retard the deterioration of food. This remains the case regardless of the subjective purpose for which this substance is added to the Product.

19.     Citric acid does not fall into any of the regulatory exemptions from the definition of a preservative.

20.     The FDA expressly classifies citric acid as a preservative in its Overview of Food Ingredients, Additives, and Colors, on the FDA's website:

---

[1] http://www.macmillandictionary.com/us/dictionary/american/tend

| Types of Ingredients | What They Do | Examples of Uses | Names Found on Product Labels |
|---|---|---|---|
| **Preservatives** | Prevent food spoilage from bacteria, molds, fungi, or yeast (antimicrobials); slow or prevent changes in color, flavor, or texture and delay rancidity (antioxidants); maintain freshness | Fruit sauces and jellies, beverages, baked goods, cured meats, oils and margarines, cereals, dressings, snack foods, fruits and vegetables | Ascorbic acid, **citric acid**, sodium benzoate, calcium propionate, sodium erythorbate, sodium nitrite, calcium sorbate, potassium sorbate, BHA, BHT, EDTA, tocopherols (Vitamin E) |

http://www.fda.gov/Food/IngredientsPackagingLabeling/FoodAdditivesIngredients/ucm094211.htm.

21.    Citric acid's nature as a preservative is also acknowledged by insiders in the preservative manufacturing and distribution industries. FBC Industries, Inc. a producer and supplier of FCC grade Citric Acid additives, acidulants, buffering agents and preservatives for the food and beverage industry describes citric acid's function: "Citric acid is the most commonly used acidulant in the industry. As a food additive or food grade product, citric acid is used as a flavoring and preservative. The buffering properties of citrates are used to control pH and flavor."[2]

22.    The FDA's Warning Letter to the manufacturer of the Chiquita brand "Pineapple Bites with Coconut" and "Pineapple Bites" dated October 6, 2010 further confirms that citric acid is a preservative:

> "The 'Pineapple Bites' and 'Pineapple Bites with Coconut' products are further misbranded within the meaning of section 403(k) of the Act [21 U.S.C. 343(k)] in that they contain the chemical preservative ascorbic acid and citric acid but their labels fail to declare these preservatives with a description of their functions. 21 CFR 101.22."

*See* **Exhibit B**, FDA Warning Letter dated October 6, 2010 (emphasis added).

---

[2] http://www.fbcindustries.com/Citric_Acid.aspx

23. As described above in ¶¶ 17, 29, a preservative as defined by the FDA is a substance that "tends" to prevent or retard the deterioration of foods. Thus, it is not necessary that it functions as a preservative in every single instance for it to qualify as a preservative according to the FDA's definition, so long as this is its general tendency.

24. However, the citric acid in the Products does as a matter of fact function as a preservative. Purveyors of citric acid routinely acknowledge its usefulness for preserving pasta sauces. The Great American Spice Company states:

> Don't be a sour puss…. Be a sour pickle – *maker*. Our citric acid (also known as sour salt) is a candid way to can your homegrown garden goodies this year. Known for its preservative qualities, citric acid can be added to drinks, ice cream, jams, tomato based products (like pasta sauce), canned fruit, and yogurt. And for large projects, don't get your pickles in a bunch, we offer several sizes of citric acid and cook books, too – we'll be sure to help you complete your canning project. Or when you're feeling the need for something a little sour, add a little citric acid to your favorite food or drinks to give it a little cheek squinting tartness.[3]

25. Aficionados of homemade tomato and pasta sauces also recognize the preservative function of citric acid when it comes to these foods. As Mick Telkamp observes on hgtv.com, modern tomatoes typically do not contain enough citric acid to preserve themselves:

> Over the years, the most popular tomatoes have been bred for taste, texture and longevity. While this sounds pretty good, it has left us with many a modern tomato that no longer has the acid content needed to kill that dreaded bacteria. Although there are still plenty of tomatoes out there with the high acid content to permit water bath canning, without testing pH balances of each batch, they must all be presumed to be low acid fruit.[4]

26. Thus, citric acid is required to compensate for this deficiency. As Anindita Chakravarty observes:

> If you are planning to make your very own homemade tomato sauce, just buy a jar of citric acid, instead of bringing home tonnes of lemons in plastic crates. The same can be used to make tomato sauce and stored for later use. This homemade tomato sauce can then be turned into fresh lasagna, spaghetti or pasta sauce whenever required. Adding citric acid to

---

[3] https://www.americanspice.com/citric-acid-sour-salt/
[4] https://www.hgtv.com/outdoors/gardens/garden-to-table/how-to-can-spaghetti-sauce

the sauce prevents spoilage and growth of microbes, apart from giving it the tangy taste. Summer in a jar![5]

27.     That citric acid functions as a preservative specifically with respect to the Products is confirmed by the Declaration of Dr. Marc Meyers, a food scientist with a Ph.D., nearly thirty years of experience in the field, published work, and patents. *See* **Exhibit C,** the Declaration of Dr. Marc Meyers ("Meyers Decl.") ¶¶ 4-19.

28.     Dr. Meyers observes that citric acid can have the non-preservative function of imparting added taste when included in sufficient quantities.  Meyers Decl. ¶ 24

29.     However, citric acid will function as a preservative at levels lower than it requires to act as a taste enhancer.   Meyers Decl. ¶ 25.  Thus, a level of citric acid sufficient to enhance taste is necessarily sufficient to function as a preservative.

30.     Citric acid functions as a preservative through a variety of mechanisms, including indirect antimicrobial effect (lowering pH), direct antimicrobial effect, sequestration, and antioxidation.  Meyers Decl. ¶¶ 26-29.

31.     These general qualities are in play with the Products, whose ingredients (olive oil and diced tomatoes) and packaging (glass jar) enable citric acid to function as a preservative. Meyers Decl. ¶¶ 30-35

32.     Defendant cannot argue that it includes acid in the Products for some purpose other than preserving their contents.   Whatever Defendant's primary *motivation* for using citric acid in the Products, Defendant's motivation does not influence the chemical *function* of citric acid.

---

[5] https://warehousebizongo.wordpress.com/2016/03/03/why-is-citric-acid-so-awesome/

33. Defendant also cannot argue that its citric acid does not function as a preservative because its canning already accomplishes this. As Dr. Meyers explains, food manufactures employ multiple "hurdles" to retard food spoilage, and canning does not preclude citric acid from performing its preservative function. Meyers Decl. ¶¶ 36-39.

**Plaintiff's Claims Are Consistent With Federal Law**

34. Defendant's deceptive misrepresentations violate the FDCA, which provides that "[a] food shall be deemed misbranded… [i]f its labeling is false or misleading in any particular." 21 U.S.C. § 343 (a)(1).

35. Plaintiff's claims are not preempted by the FDCA because the definition of "preservative" as used herein is consistent with that of the FDA (see above). Moreover, FDA regulations specifically note that claims like "contains no preservatives" are non-nutritive claims that are not governed by 21 C.F.R. § 101.13. *See* 21 C.F.R. § 101.65(b)(2). Since the FDA has not issued specific standards governing when "no preservative" claims are either true or false, such representations fall outside the ambit of FDA regulations. Accordingly, Plaintiff's claim cannot possibly be preempted. *See Bimont v. Unilever U.S., Inc.*, No. 14-CV-7749 (JPO), 2015 U.S. Dist. LEXIS 119908, at *6 (S.D.N.Y. Sep. 9, 2015) ("… preemption does not preclude a state-law claim if the state requirement is outside the scope of the relevant federal requirements.").

**Plaintiff And Class Members Were Injured As A Result Of Defendant's Misrepresentation**

36. Plaintiff and Class members were injured when Defendant denied them the full benefit of their bargain. They paid money for Products that they were led to believe were preservative-free but then received Products that were preservative-laden, which have significantly less value. Plaintiff and Class members were thus deprived of the benefit of their bargains. Plaintiff

and Class members would not have purchased the Products or would only have been willing to pay less for them, had they known the truth about them. Plaintiff and Class members were injured in an amount up to the purchase price, the difference between the actual value of the Products and the value of the Products as misrepresented to them by Defendant, to be determined by expert testimony at trial.

37. By representing that the Products have "No Preservatives", Defendant seeks to capitalize on consumers' preference for healthier foods and drinks with fewer additives, and the association between these products and a wholesome way of life.

38. American consumers are increasingly seeking out and purchasing foods that they perceive are principally made of ingredients that are healthful and nutritious.[6]

39. Consumers are willing to pay more for less processed products with no additives because of this association as well as the perceived higher quality, health, and safety benefits associated with preservative-free foods.

40. The marketing research firm Mintel reports that more and more Americans are concerned with avoiding foods containing preservatives:

> Foods bearing "free-from" claims are increasingly relevant to Americans, as they perceive the products as closely tied to health. New research from Mintel reveals that 84 percent of American free-from consumers buy free-from foods because they are seeking out more natural or less processed foods. In fact, 43 percent of consumers agree that free-from foods are healthier than foods without a free-from claim, while another three in five believe the fewer ingredients a product has, the healthier it is (59 percent).
>
> Among the top claims free-from consumers deem most important are trans-fat-free (78 percent) and preservative-free (71 percent).[7]

---

[6] Nancy Gagliardi, Consumers Want Healthy Foods—And Will Pay More for Them, FORBES (Feb. 18, 2015, 11:30 AM), http://goo.gl/A7Z5WN (last visited 01/02/2018) (88% of respondents willing to pay more for healthier foods); see INT'L FOOD INFO. COUNCIL FOUND., WHAT'S YOUR HEALTH WORTH?: FOOD & HEALTH SURVEY 2015, at 42 (2015), http://goo.gl/4g5wNb.

[7] http://www.mintel.com/press-centre/food-and-drink/84-of-americans-buy-free-from-foods-because-they-believe-them-to-be-more-natural-or-less-processed

41. Alternet.org reports on research showing that most Americans are prepared to pay a premium price for healthier options:

> Not only are consumers increasingly seeking out wholesome foods, they are willing to pay a premium for them. According to Nielsen's 2015 Global Health & Wellness Survey that polled over 30,000 people online, 88 percent of Americans are willing to pay more for healthier foods. Global sales of healthy food products are estimated to reach $1 trillion by 2017, according to Euromonitor.

> When it comes to what consumers will be seeking out more of over the coming year, it may amount to single word. "Just think of the word no," Seifer said. "No preservatives, no additives, no growth hormones."[8]

42. *See Orlander v. Staples, Inc.*, 802 F.3d 289, 302 (2d Cir. 2015) ("the issue of 'price premium' was relevant because it showed that plaintiffs paid more than she would have for the good but for the deceptive practices of the defendant-sellers"); *Kacocha v. Nestle Purina Petcare Co.*, No. 15-CV-5489 (KMK), 2016 U.S. Dist. LEXIS 107097, at *51-52 (S.D.N.Y. Aug. 11, 2016) ("[I]n his Complaint, Plaintiff seeks monetary damages on the grounds that he 'would not have paid the premium price he paid' to buy the Products had he 'known the truth.'… Case law makes clear that this is sufficient at the motion-to-dismiss phase for a § 349 claim to survive."); *Koenig v. Boulder Brands, Inc.*, 995 F. Supp. 2d 274, 288-89 (S.D.N.Y. 2014) ("Plaintiffs claim that, but for Defendant's 'unfair and deceptive practices,' they—and the putative class—would not have purchased, or paid a price premium for, Smart Balance. Compl. ¶¶ 7, 81. Indeed, Plaintiffs claim that they paid price premiums specifically 'based on Defendant's misrepresentations,' and allege that they deserve damages in the amount of either the purchase prices, or the price premiums that they paid for Smart Balance. Id. ¶ 81. Accordingly, the Court finds that Plaintiffs have adequately alleged injury under GBL § 349…")

---

[8] http://www.alternet.org/food/8-food-trends-watch-2016

**Defendant's Misrepresentations Were Material To, Would Deceive, And Would Be Reasonably Relied Upon By, A Reasonable Consumer**

43.     Defendant's misrepresentation would deceive a reasonable consumer because reasonable consumers reasonably expect business to be in compliance with consumer protection laws prohibiting them from disseminating false statements.  Thus, a reasonable consumer would assume that Defendant's "No Preservatives" claim was true.

44.     A representation that a product has no preservatives is material to a reasonable consumer when deciding to purchase it. Plaintiffs did, and a reasonable consumer would, attach importance to whether Defendant's Products were free of preservatives because it is common knowledge that consumers prefer to avoid foods with potentially unhealthy additives (see consumer behavior research above).

45.     The reasonable consumers' understanding of "preservatives" does not hinge on a preservative's function in a particular product because this has nothing to do with the *reason why* consumers care about preservatives in the first place.  Lisa Marshall of the *The New Hope Network* explains:

> While it's naturally present in citrus fruits, it's not economical to use fruit-derived citric acid as a food additive. Most citric acid found in food is a commodity chemical produced by feeding simple carbohydrates to Aspergillus niger mold and then processing the resulting fermented compound. Calcium hydroxide and sulfuric acid are often used in processing. "We would all love to think that citric acid comes from an orange, but it does not," says Mary Mulry, PhD, a food scientist and founder of consulting firm FoodWise. "It comes from a chemical process." Pfizer was the leading producer of citric acid for decades. Today, leaders include Archer Daniels Midland Co. and Cargill.[9]

46.     These concerns are utterly unaffected by whether a preservative actually functions as such in a given product.  Reasonable consumers would not be relieved to learn that there were no "pesticides" in their fruit because the pesticides sprayed on it had never performed their pesticidal function—there having been no actual pests in the area to kill at the end of the day.  For

---

[9] http://www.newhope.com/ingredients-general/is-citric-acid-natural

this fact makes absolutely no physiological difference when it comes to ingesting pesticides. Likewise with preservatives. Reasonable consumers do not want to ingest preservatives because of their effects on *them*, not because of their effects on microbes within a food. Thus, while citric acid does in fact function as a preservative in the Products, the reasonable consumer's deception does not depend on this.

47.     Plaintiff and Class members reasonably relied on Defendant's false and/or misleading representations that the Products were free of preservatives. At the point of sale, Plaintiffs and Class members did not know, and had no reason to know, that the Products were misbranded and misleading as set forth herein, and would not have bought the Products had they known the truth about them.

48.     Defendant intended to induce consumer reliance because it would not have included these representations on the Product labels if this was not going to influence consumer behavior. Indeed, the importance of Defendant's "No Preservatives" representation is expressly acknowledged on Defendant's website, where it states, e.g., "Our Roasted Garlic is gluten free and contains no preservatives so you can feel good serving it to your friends and family."[10]

**Defendant Has An Intent To Mislead**

49.     Defendant knew that its "No Preservatives" claims are misleading.

50.     Upon information and belief, Defendant retains food scientists who can apprise it of the preservative properties of citric acid.

51.     Given the importance that consumers attach to preservative-free foods, discussed above, Defendant has a natural interest in misleading consumers as detailed above, as its

---

[10] https://www.barilla.com/en-us/products/sauces/roasted-garlic

deceptions and misleading omissions provide a clear marketing advantage over competitors that do not engage in such deceptive conduct.

## CLASS ACTION ALLEGATIONS

52. Plaintiff KUBILIUS brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of the following Class:

> All persons or entities in the United States who made retail purchases of Products during the applicable limitations period, and/or such subclasses as the Court may deem appropriate ("the Nationwide Class").

53. In the alternative, Plaintiff KUBILIUS seeks to represent a Class consisting of:

> All persons or entities who made retail purchases of the Products in New York during the applicable limitations period, and/or such subclasses as the Court may deem appropriate ("the New York Class").

54. The proposed Classes exclude current and former officers and directors of Defendant, members of the immediate families of the officers and directors of Defendant, Defendant's legal representatives, heirs, successors, assigns, any entity in which it has or has had a controlling interest, and the judicial officer to whom this lawsuit is assigned.

55. Plaintiff reserves the right to revise Class definitions based on facts learned in the course of litigating this matter.

56. This action is proper for Class treatment under Rules 23(b)(1)(B) and 23(b)(3) of the Federal Rules of Civil Procedure. While the exact number and identities of other Class members are unknown to Plaintiff at this time, Plaintiff is informed and believes that there are millions of Class members. Thus, the Class members are so numerous that individual joinder of all Class members is impracticable.

57. Common questions of law and fact arise from Defendant's conduct described herein. Such questions are common to all Class members and predominate over any questions affecting individual Class members. These include:

    a. whether claiming "No Preservatives" on Products containing citric acid is false and misleading;

    b. whether Defendant deprived Plaintiff and Class members of the benefit of their bargains because the Products purchased had less value than what Defendant warranted;

    c. whether Defendant must disgorge any and all profits it has made as a result of its misconduct; and

    d. whether Defendant should be barred from marketing the Products as having "No Preservatives."

58. Plaintiff's claims are typical of those of the Class members because Plaintiff and the other Class members sustained damages arising out of the same wrongful conduct, as detailed herein. Plaintiff and Class members purchased Defendant's Products and sustained similar injuries arising out of Defendant's conduct in violation of Federal law, Illinois law, New York law, and the laws of the other 48 states and the District of Columbia. Defendant's unlawful, unfair, and fraudulent actions concern the same business practices described herein, irrespective of where they occurred or were experienced. The injuries to the Classes were caused directly by Defendant's unfair and deceptive practices. In addition, the factual underpinning of Defendant's misconduct is common to all Class members and represents a common thread of misconduct resulting in injury to all Class members. Plaintiff's claims arise from the same practices and course of conduct that give rise to the claims of Class members and are based on the same legal theories.

59.     Plaintiff will fairly and adequately represent and pursue the interests of the Classes and have retained competent counsel experienced in prosecuting class actions. Plaintiff understands the nature of his claims herein, has no disqualifying conditions, and will vigorously represent the interests of the Class members. Neither Plaintiff nor Plaintiff's counsel have any interests that conflict with or is antagonistic to the interests of the Class members.

60.     Plaintiff has retained highly competent and experienced class action attorneys to represent their interests and those of the Class members. Plaintiff and Plaintiff's counsel have the necessary financial resources to adequately and vigorously litigate this class action. Plaintiff and Plaintiff's counsel are aware of their fiduciary responsibilities to the Class members and will diligently discharge those duties by vigorously seeking the maximum possible recovery for them.

61.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy. The damages suffered by any individual Class member are too small to make it economically feasible for an individual Class member to prosecute a separate action, and it is desirable for judicial efficiency to concentrate the litigation of the claims in this forum. Furthermore, the adjudication of this controversy through a class action will avoid the potentially inconsistent and conflicting adjudications of the claims asserted herein. There will be no difficulty in the management of this action as a class action.

62.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(2) are met, as Defendant has acted or refused to act on grounds generally applicable to the Classes, thereby making appropriate final injunctive or equitable relief with respect to the Classes as a whole.

63.     The prerequisites to maintaining a class action for injunctive relief or equitable relief pursuant to Rule 23(b)(3) are met, as questions of law or fact common to the Classes

17

predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

64. The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. Additionally, individual actions may be dispositive of the interest of all members of the Classes, although certain Class members are not parties to such actions.

65. Defendant's conduct is generally applicable to the Classes as a whole and Plaintiff seeks, *inter alia*, equitable remedies with respect to the Classes as a whole. As such, Defendant's systematic policies and practices make declaratory relief with respect to the Classes as a whole appropriate.

## CAUSES OF ACTION

## COUNT I

**VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT (815 ILCS 505/1 *et seq*.)**

**(brought on behalf of the Nationwide Class, in conjunction with the substantively similar consumer protection laws of other states and the District of Columbia to the extent the Illinois Consumer Fraud and Deceptive Practices Act does not reach the claims of out-of-state Class members)**

66. Plaintiff KUBILIUS realleges and incorporates by reference the allegations contained in all preceding paragraphs of this Complaint and further alleges as follows:

67. The Illinois Consumer Fraud and Deceptive Business Practices Act (the "Act") prohibits as a deceptive act or practice "the use or employment of any deception, fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any

material fact, with intent that others rely upon the concealment, suppression or omission of such material fact." 815 ILCS 505/2.

68.     815 ILCS 505/2 also provides that this includes "represent[ing] that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or qualities that they do not have" as described by the Illinois Uniform Deceptive Trade Practices Act. 815 ILCS 510/2.

69.     The Act provides that "[a]ny person who suffers actual damage as a result of a violation of this Act committed by any other person may bring an action against such person." A court has the discretion to "award actual economic damages or any other relief which the court deems proper." 815 ILCS 505/10a(a). A court may also "grant injunctive relief where appropriate and may award, in addition to the relief provided in this Section, reasonable attorney's fees and costs to the prevailing party." 815 ILCS 505/10a(c).

70.     A Plaintiff must allege five elements in order to state a claim under the Act: (1) a deceptive act or unfair practice occurred, (2) the defendant intended for plaintiff to rely on the deception, (3) the deception occurred in the course of conduct involving trade or commerce, (4) the plaintiff sustained actual damages, and (5) the damages were proximately caused by the defendant's deception. *Blankenship v. Pushpin Holdings, LLC*, 157 F. Supp. 3d 788, 792 (N.D. Ill. 2016).

71.     Plaintiff KUBILIUS's claim satisfies element 1 of the Act because Defendant engaged in a deceptive act when it represented that the Products were preservative-free even though they contained citric acid.

72.     Plaintiff KUBILIUS's claim satisfies element 2 of the Act because Defendant intended that he believe that the Product was preservative-free and to purchase it in reliance on this belief.

73.     Plaintiff KUBILIUS's claim satisfies element 3 of the Act because the deception occurred in the context of a commercial transaction.

74.     Plaintiff KUBILIUS's claim satisfies element 4 of the Act because Plaintiff KUBILIUS sustained actual damages when he paid money for a good that was substantially less valuable than was warranted to him.  *See Su Yeun Kim v. Carter's Inc*., 598 F.3d 362, 365 (7th Cir. 2010) ("In the less typical case of a private ICFA action brought by an individual consumer, actual loss may occur if the seller's deception deprives the plaintiff of 'the benefit of her bargain' by causing her to pay 'more than the actual value of the property.'") (quoting *Mulligan v. QVC, Inc*., 888 N.E.2d 1190, 1197-98 (Ill. App. Ct. 2008)).

75.     Plaintiff KUBILIUS's claim satisfies element 5 of the Act because Defendant's deception was the proximate cause of his damages.  Plaintiff KUBILIUS would not have purchased the Product had he known it contained preservatives.  Thus, it was only Defendant's representation to the contrary that caused him to purchase the Product and suffer the resultant injury.

76.     Accordingly, Plaintiff KUBILIUS brings this claim under the Act on behalf of himself and the other members of the Nationwide Class and requests: 1) monetary damages in an amount to be determined by expert analysis at trial, 2) punitive damages, 3) restitution for monies wrongfully obtained, 4) disgorgement of ill-gotten revenues, 5) declaratory relief, 6) injunctive relief enjoining Defendant from disseminating that its Products contain "No Preservatives", 7) reasonable attorneys' fees, and 8) any other relief deemed appropriate by the Court.

77.    While Plaintiff KUBILIUS's deception and injury transpired in New York, not Illinois, the decision to market the Products as containing "No Preservatives" despite the presence of citric acid was made in Illinois.  Further, the profits ensuing from this misrepresentation flowed back to Illinois. Thus, Plaintiff KUBILIUS's claims are within the reach of the Illinois Consumer Fraud and Deceptive Practices Act.  *See Avery v. State Farm Mutual Auto. Ins. Co.*, 835 N.E.2d 801, 853 (2005) ("The place of injury or deception is only one of the circumstances that make up a fraudulent transaction and focusing solely on that fact can create questionable results. If, for example, the bulk of the circumstances that make up a fraudulent transaction occur within Illinois, and the only thing that occurs out-of-state is the injury or deception, it seems to make little sense to say that the fraudulent transaction has occurred outside Illinois.")

## COUNT II

### VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349 (DECEPTIVE AND UNFAIR TRADE PRACTICES ACT)

#### (brought on behalf of the New York Class)

78.    Plaintiff KUBILIUS realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further allege as follows:

79.    NY GBL § 349 provides that "deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are . . . unlawful."

80.    Under the NY GBL § 349, it is not necessary to prove justifiable reliance. ("To the extent that the Appellate Division order imposed a reliance requirement on General Business Law [§] 349 … claims, it was error. Justifiable reliance by the plaintiffs is not an element of the statutory claim." *Koch v. Acker, Merrall & Condit Co.*, 18 N.Y.3d 940, 941 (N.Y. App. Div. 2012) (internal citations omitted)).

81. Any person who has been injured by reason of any violation of the NY GBL § 349 may bring an action in their own name to enjoin such unlawful act or practice, an action to recover their actual damages or fifty dollars, whichever is greater, or both such actions. The court may, in its discretion, increase the award of damages to an amount not to exceed three times the actual damages up to one thousand dollars, if the court finds the Defendant willfully or knowingly violated this section. The court may award reasonable attorney's fees to a prevailing plaintiff.

82. The practices employed by Defendant, whereby it advertises, promotes, and markets its Products as free of preservatives is unfair, deceptive, misleading, and in violation of the NY GBL § 349.

83. Defendant's business act and practices and/or omissions as alleged herein constitute deceptive acts or practices under NY GBL § 349, which were enacted to protect the consuming public from those who engage in unconscionable, deceptive, and unfair acts or practices in the conduct of any business, trade, or commerce.

84. Defendant's Practices described throughout this Complaint were specifically directed to consumers and violate the NY GBL § 349 for, *inter alia*, the following reasons:

a. Defendant misrepresents or misleadingly advertises that the Products have "No Preservatives" with an intent to cause Plaintiff and Class members to believe that they are a healthy alternative in comparison to competitors;

b. Defendant caused Plaintiff and Class members to suffer a probability of confusion and a misunderstanding of legal rights, obligations and/or remedies by and through its conduct;

22

       c.      Defendant made material representations and statements of fact to Plaintiff and Class members that resulted in them reasonably believing the represented or suggested state of affairs to be other than what they actually were.

85.    The practices employed by Defendant, whereby Defendant advertises, promotes, and markets its Products as having "No Preservatives" are unfair, deceptive, and misleading and are in violation of NY GBL § 349.

86.    Under the circumstances, Defendant's conduct in employing these unfair and deceptive trade practices is malicious, willful, wanton, and outrageous such as to shock the conscience of the community and warrant the imposition of punitive damages.

87.    Defendant's actions impact the public interest because Plaintiffs were injured in exactly the same way as millions of others purchasing the Products as a result of Defendant's generalized course of deception.

88.    The foregoing deceptive acts and practices proximately caused Plaintiff and Class members to suffer actual damages in the form of, *inter alia*, monies spent to purchase the Products. Plaintiff and Class members are entitled to recover compensatory damages, statutory damages, punitive damages, attorneys' fees and costs, and any other relief the Court deems appropriate. Damages can be calculated through expert testimony at trial.

89.    Defendant should be enjoined from representing "No Preservatives" on the Product labels pursuant to NY GBL § 349.  Plaintiff, on behalf of himself and all others similarly situated, respectfully demands a judgment enjoining Defendant's conduct, awarding costs of this proceeding and attorneys' fees, as provided by NY GBL § 349, and such other relief as this Court deems just and proper.

## COUNT III

**DAMAGES FOR VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 350
(FALSE ADVERTISING LAW)**

**(brought on behalf of the New York Class)**

90.  Plaintiff KUBILIUS realleges and incorporates by reference the allegations contained in all preceding paragraphs and further alleges as follows:

91.  Defendant has been and/or is engaged in the "conduct of … business, trade or commerce" within the meaning of N.Y. Gen. Bus. Law § 350.

92.  New York Gen. Bus. Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce." False advertising includes "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in light of … representations [made] with respect to the commodity …" N.Y. Gen. Bus. Law § 350-a(1).

93.  Defendant caused to be disseminated throughout New York and the United States, through advertising, marketing and other publications, statements that were untrue and/or misleading.

94.  Defendant's affirmative misrepresentations or deceptions of "No Preservatives" are material and substantially uniform in content, presentation, and impact upon consumers at large. Consumers purchasing the Products were, and continue to be, exposed to Defendant's material deceptions.

95.  Defendant has violated N.Y. Gen. Bus. Law § 350 because its "No Preservatives" representations were material to and likely to deceive a reasonable consumer.

96.  Plaintiff and Class members have suffered an injury, including the loss of money or property, as a result of Defendant's false and misleading advertising.

24

97.     Pursuant to N.Y. Gen. Bus. Law § 350-e, Plaintiff and Class members seek monetary damages (including actual damages and minimum, punitive, or treble and/or statutory damages pursuant to GBL § 350-a(1)), injunctive relief, restitution and disgorgement of all monies obtained by means of Defendant's unlawful conduct, interest, and attorneys' fees and costs.

<u>**COUNT IV**</u>

**COMMON LAW FRAUD**

**(brought on behalf of the Nationwide Class or, alternatively, the New York Class)**

98.     Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs and further alleges as follows:

99.     Defendant intentionally makes materially false and misleading representations regarding the nature of the Products.

100.     Plaintiff and Class members reasonably relied on Defendant's false and misleading representations. They did not know, and had no reason to know, that the Products contain preservatives.  They would not have purchased the Products had they known Defendant's "No Preservative" claims were false.

101.     Defendant knew and intended that Plaintiff and Class members would rely on its misrepresentations.

102.     Plaintiff and Class members have been injured as a result of Defendant's fraudulent conduct.

103.     Defendant is liable to Plaintiff and Class members for damages sustained as a result of Defendant's fraud.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all other similarly situated, seeks judgment against Defendant, as follows:

a. An Order that this action be maintained as a class action, appointing Plaintiff KUBILIUS as representative of the Nationwide Class;

b. In the Alternative, an Order appointing Plaintiff KUBILIUS as representative of the New York Class;

c. An Order appointing the undersigned attorney as Class Counsel in this action;

d. Restitution and disgorgement of all amounts obtained by Defendant as a result of its misconduct, together with interest thereon from the date of payment, to the victims of such violations;

e. All recoverable compensatory and other damages sustained by Plaintiffs and Class members;

f. Actual and/or statutory damages for injuries suffered by Plaintiff and Class members in the maximum amount permitted by applicable law;

g. An order (i) requiring Defendant to immediately cease their wrongful conduct as set forth in this Complaint; (ii) ordering Defendant to engage in a corrective advertising campaign; and (iii) requiring Defendant to reimburse Plaintiff and all Class members, up to the amounts paid for the Products;

h. Statutory pre-judgment and post-judgment interest on any amounts;

i. Payment of reasonable attorneys' fees and costs; and

j. Such other relief as the Court may deem just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff, on behalf of themselves and all others similarly situated, demand a trial by jury on all questions of fact raised by the Complaint.


Dated: January 18, 2019

Respectfully submitted,



By: _____*/s/ C.K. Lee*_____
       C.K. Lee, Esq.

**LEE LITIGATION GROUP, PLLC**
C.K. Lee, Esq. (#2903557)
73 West Monroe Street
Chicago, IL 60603
Tel.: 212-465-1188
Fax: 212-465-1181
Email: cklee@leelitigation.com
*Attorneys for Plaintiff and the Class*